___ FILED     ___ LODGED
___ RECEIVED  ___ COPY

DEC 1 2 2023

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

___ FILED     ___ LODGED
___ RECEIVED  ___ COPY

APR 2 9 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

GARY M. RESTAINO
United States Attorney
District of Arizona
DAVID A. PIMSNER
Arizona State Bar No. 007480
ABBIE BROUGHTON MARSH
California State Bar No. 226680
CHRISTOPHER BROWN
Wisconsin State Bar No. 1037414
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: david.pimsner@usdoj.gov
Email: abbie.broughton.marsh@usdoj.gov
Email: christopher.brown7@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-22-01070-PHX-DJH |
| Plaintiff, | **PLEA AGREEMENT** |
| vs. | |
| Ali Joseph,<br>aka Abu Rahaf,<br>aka Ali Kazem Youssef, | |
| Defendant. | |

Plaintiff, United States of America, and the defendant, Ali Joseph, hereby agree to resolve this matter on the following terms and conditions:

1. **PLEA**

The defendant will plead guilty to Count 1 of the indictment charging the defendant with a violation of 18 United States Code (U.S.C.) § 1958(a), Use of Interstate Commerce Facilities in the Commission of Murder-For-Hire, a Class C felony offense.

2. **MAXIMUM PENALTIES**

a.  A violation of 18 U.S.C. § 1958(a) is punishable by a maximum fine of $250,000, a maximum term of imprisonment of 10 years, or both, and a term of supervised

1  release of three years. A maximum term of probation is five years (including a minimum
2  term of one year if probation is imposed).

3      b.    According to the Sentencing Guidelines issued pursuant to the Sentencing
4  Reform Act of 1984, the Court shall order the defendant to:

5          (1)    make restitution to any victim of the offense pursuant to 18 U.S.C.
6  § 3663 and/or 3663A, unless the Court determines that restitution would not be
7  appropriate;

8          (2)    pay a fine pursuant to 18 U.S.C. § 3572, unless the Court finds that a
9  fine is not appropriate;

10         (3)    serve a term of supervised release when required by statute or when a
11 sentence of imprisonment of more than one year is imposed (with the understanding that
12 the Court may impose a term of supervised release in all other cases); and

13         (4)    pay upon conviction a $100.00 special assessment for each count to
14 which the defendant pleads guilty pursuant to 18 U.S.C. § 3013.

15     c.    The Court is required to consider the Sentencing Guidelines in determining
16 the defendant's sentence. However, the Sentencing Guidelines are advisory, and the Court
17 is free to exercise its discretion to impose any reasonable sentence up to the maximum set
18 by statute for the crime(s) of conviction, unless there are stipulations to the contrary that
19 the Court accepts.

20     d.    The defendant recognizes that pleading guilty may have consequences with
21 respect to defendant's immigration status if the defendant is a recently naturalized United
22 States citizen or is not a citizen of the United States. Under federal law, a broad range of
23 crimes are removable offenses, including the offense(s) to which defendant is pleading
24 guilty. Although there may be exceptions, the defendant understands that the defendant's
25 guilty plea and conviction for this offense make it practically inevitable and a virtual
26 certainty that the defendant will be removed or deported from the United States. The
27 defendant agrees that defendant has discussed this eventuality with defendant's attorney.
28 The defendant nevertheless affirms that defendant wants to plead guilty regardless of any

1  immigration consequences that this plea entails, even if the consequence is the defendant's
2  automatic removal from the United States.

3  **3.     AGREEMENTS REGARDING SENTENCING**

4     a.     Stipulation.  Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and
5  defendant stipulate and agree to the following:

6          1.     If U.S.S.G. §2E1.4(a)(1) applies to the relevant conduct, the sentence
7     shall not exceed 87 months.

8          2.     If U.S.S.G. §2A1.5 applies to the relevant conduct by the application
9     of the cross reference set forth in §2E1.4(a)(2), the sentence shall not exceed 102
10    months.

11         These stipulated sentencing caps will not change based on departures considered
12 under U.S.S.G. § 1B1.1(b). Nothing in this agreement shall preclude defendant from
13 moving for a downward departure, variance, or sentence below the cap, or the court from
14 imposing a sentence below the cap.

15    b.     Assets and Financial Responsibility.  The defendant shall make a full
16 accounting of all assets in which the defendant has any legal or equitable interest.  The
17 defendant shall not (and shall not aid or abet any other party to) sell, hide, waste, spend, or
18 transfer any such assets or property before sentencing, without the prior approval of the
19 United States (provided, however, that no prior approval will be required for routine, day-
20 to-day expenditures). The defendant also expressly authorizes the United States Attorney's
21 Office to immediately obtain a credit report as to the defendant in order to evaluate the
22 defendant's ability to satisfy any financial obligation imposed by the Court.  The defendant
23 also shall make full disclosure of all current and projected assets to the U.S. Probation
24 Office immediately and prior to the termination of the defendant's supervised release or
25 probation, such disclosures to be shared with the U.S. Attorney's Office, including the
26 Financial Litigation Unit, for any purpose.  Finally, the defendant shall participate in the
27 Inmate Financial Responsibility Program to fulfill all financial obligations due and owing
28 under this agreement and the law.

c.     Acceptance of Responsibility. If the defendant makes full and complete disclosure to the U.S. Probation Office of the circumstances surrounding the defendant's commission of the offense, and if the defendant demonstrates an acceptance of responsibility for this offense up to and including the time of sentencing, the United States will recommend a two-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(a). If the defendant has an offense level of 16 or more, the United States will move the Court for an additional one-level reduction in the applicable Sentencing Guidelines offense level pursuant to U.S.S.G. § 3E1.1(b).

**4.     AGREEMENT TO DISMISS OR NOT TO PROSECUTE**

a.     This office shall not prosecute the defendant for any offenses committed by the defendant, and known by the United States, in connection with the FBI's investigation of the defendant between April 2021 and August 2022 as outlined in the discovery provided to the defense.

b.     This agreement does not, in any manner, restrict the actions of the United States in any other district or bind any other United States Attorney's Office.

**5.     COURT APPROVAL REQUIRED; REINSTITUTION OF PROSECUTION**

a.     If the Court, after reviewing this plea agreement, concludes that any provision contained herein is inappropriate, it may reject the plea agreement and give the defendant the opportunity to withdraw the guilty plea in accordance with Fed. R. Crim. P. 11(c)(5).

b.     If the defendant's guilty plea or plea agreement is rejected, withdrawn, vacated, or reversed at any time, this agreement shall be null and void, the United States shall be free to prosecute the defendant for all crimes of which it then has knowledge and any charges that have been dismissed because of this plea agreement shall automatically be reinstated. In such event, the defendant waives any and all objections, motions, and defenses based upon the Statute of Limitations, the Speedy Trial Act, or constitutional restrictions in bringing later charges or proceedings. The defendant understands that any statements made at the time of the defendant's change of plea or sentencing may be used

against the defendant in any subsequent hearing, trial, or proceeding subject to the limitations of Fed. R. Evid. 410.

**6.     WAIVER OF DEFENSES AND APPEAL RIGHTS**

The defendant waives (1) any and all motions, defenses, probable cause determinations, and objections that the defendant could assert to the indictment or information; and (2) any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction, an order of restitution or forfeiture, the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 (sentencing appeals) and motions under 28 U.S.C. §§ 2241 and 2255 (habeas petitions), and any right to file a motion for modification of sentence, including under 18 U.S.C. § 3582(c) (except for the right to file a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A) and to appeal the denial of such a motion). This waiver shall result in the dismissal of any appeal, collateral attack, or other motion the defendant might file challenging the conviction, order of restitution or forfeiture, or sentence in this case. This waiver shall not be construed to bar an otherwise-preserved claim of ineffective assistance of counsel or of "prosecutorial misconduct" (as that term is defined by Section II.B of Ariz. Ethics Op. 15-01 (2015)).

**7.     DISCLOSURE OF INFORMATION**

a.     The United States retains the unrestricted right to provide information and make any and all statements it deems appropriate to the U.S. Probation Office and to the Court in connection with the case.

b.     Any information, statements, documents, and evidence that the defendant provides to the United States pursuant to this agreement may be used against the defendant at any time.

c.     The defendant shall cooperate fully with the U.S. Probation Office. Such cooperation shall include providing complete and truthful responses to questions posed by the U.S. Probation Office including, but not limited to, questions relating to:

(1) criminal convictions, history of drug abuse, and mental illness; and

(2) financial information, including present financial assets or liabilities that relate to the ability of the defendant to pay a fine or restitution.

**8. FORFEITURE, CIVIL, AND ADMINISTRATIVE PROCEEDINGS**

a. Nothing in this agreement shall be construed to protect the defendant from administrative or civil forfeiture proceedings or prohibit the United States from proceeding with and/or initiating an action for civil forfeiture. Pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment, shall be subject to immediate enforcement by the United States, and shall be submitted to the Treasury Offset Program so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts (which offset will not affect the periodic payment schedule). If the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce the judgment.

**9. ELEMENTS**

**Use of Interstate Commerce Facilities in the Commission of Murder-For-Hire**

Between on or about May 9, 2022, and on or about August 23, 2022, in the District of Arizona and elsewhere:

1. The defendant used a facility in interstate or foreign commerce, that includes a telephone and an internet-based encrypted messaging application;
2. The defendant did so with the intent that murder be committed; and
3. The defendant intended that the murder be committed in exchange for pecuniary value, that is $3,000 in U.S. currency.

As to the first element, a "facility in interstate or foreign commerce" includes means of communication. 18 U.S.C. § 1958(b)(2).

As to the second element, the intent that murder be committed must have existed when the defendant used or conspired to use the facility of interstate commerce. *United States v. Driggers*, 559 F.3d 1021, 1023 (9th Cir. 2009).

"Pecuniary value" means anything of value, whether in the form of money, a negotiable instrument, a commercial interest, or anything else the primary significance of which is economic advantage. 18 U.S.C. § 1958(b)(1). The defendant must have clearly understood he or she would give or receive the thing of pecuniary value in exchange for the murderous act. *United States v. Chong*, 419 F.3d 1076, 1082 (9th Cir. 2005). A promise of economic advantage may constitute a thing of pecuniary value even if it is not enforceable under contract law. *United States v. Phillips*, 929 F.3d 1120, 1124 (9th Cir. 2019).

**10. FACTUAL BASIS**

a. The defendant admits that the following facts are true and that if this matter were to proceed to trial the United States could prove the following facts beyond a reasonable doubt:

I, Ali Joseph, was previously married to A.A. (hereinafter the Victim) and have two minor children with the Victim. On December 10, 2019, I filed for divorce from the Victim. The divorce was granted on February 17, 2021. After the divorce, I continued to seek sole custody of my minor children and had a case pending in state court.

On or about May 9, 2022, I had a conversation with an individual who turned out to be a Confidential Human Source (CHS) for the FBI. During the conversation, I told the CHS that I wanted custody of my daughters for religious purposes and that I believed the Victim wanted our daughters for tax purposes. At that time, I expressed that I wished the Victim died in an accident and the custody case would then be over.

From May 9, 2022, until on or about August 23, 2022, I continued to communicate with the CHS in-person, as well as using a facility of interstate commerce, which included a telephone and an internet-based encrypted messaging application. During a majority of these communications, the CHS was located outside of Arizona.

On July 13, 2022, I met with the CHS in Phoenix, Arizona. During the meeting, I told the CHS that I would not give the children to the Victim because I believed her to be an Apostate and I wanted to raise my children on the right path. Later in the conversation, I asked the CHS if the Victim could be hit and killed by a vehicle. The CHS told me that he/she would check for me because he/she knew trustworthy people. The CHS also told me that it would cost money to which I agreed. We then agreed to speak in code in the future when discussing the plan to murder the Victim.

On or about August 1, 2022, Maricopa County Superior Court issued a decision in my custody dispute in which the court granted me and the Victim joint legal decision-making authority and equal parenting time.

On or about August 2, 2022, I had an encrypted telephone call with the CHS. During the call, the CHS asked me if I reached a decision to "paint the apartment," which I understood to mean the plan to kill the Victim. I responded, "Yes, yes I reached that decision." I asked the CHS to return to Arizona in the near future to discuss the matter in person.

On or about August 15, 2022, I met the CHS in Phoenix, Arizona. During the meeting, I asked the CHS if the person who was going to do the murder could be disguised as a homeless person trying to rob the Victim. When asked if I changed my mind about having the Victim hit by a car, I responded "By car, by car, she might possibly survive!"

In that same meeting, I told the CHS, I could pay $3,000 with a $1,000 deposit and wanted the killing to take place while I was busy with my father so there would be no suspicions on me. I agreed to provide a photograph of the Victim, along with her vehicle information, home address and work address.

The CHS then called an individual on speakerphone whom I believed was the person who would kill the Victim. When this person asked about the timing of the murder, I hand gestured towards the CHS to indicate it should be done within 15 days. The person on the telephone accepted the terms of the murder-for-hire plan. After the call, the CHS confirmed with me the plan would be for a homeless man to wait for the Victim at her workplace and attack her. I told the CHS that I wanted the person to stab the Victim in the neck so there would be no chance of survival.

On or about August 16, 2022, I met the CHS in Phoenix, Arizona. At that time, I provided the CHS with $1,000 in U.S. currency as a down payment

for the murder, along with a piece of paper that contained two photographs of the Victim. The paper also had the Victim's first name, address, vehicle description, and vehicle license plate number. I also provided the CHS with the Victim's last name.

On or about August 19, 2022, I messaged the CHS using an internet-based encrypted messaging application. I advised the CHS that I had been informed by my divorce attorney that the Victim filed additional paperwork with the court. I told the CHS that I wanted to complete the "video project," which I meant the plan to murder the Victim, as soon as possible because I did not want to have further dealings with the court.

During the same conversation, the CHS told me that he/she provided the money and paper containing the Victim's information to the person who was going to kill the Victim. I advised the CHS to notify me when the murder was completed by sending me a funny photo or short video. I also asked the CHS to tell the person who was to commit the murder to destroy the items that I provided.

b. The defendant shall swear under oath to the accuracy of this statement and, if the defendant should be called upon to testify about this matter in the future, any intentional material inconsistencies in the defendant's testimony may subject the defendant to additional penalties for perjury or false swearing, which may be enforced by the United States under this agreement.

## APPROVAL AND ACCEPTANCE OF THE DEFENDANT

This agreement has been read to me in Arabic, and I have carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it.

I have discussed the case and my constitutional and other rights with my attorney. I understand that by entering my plea of guilty I shall waive my rights to plead not guilty, to trial by jury, to confront, cross-examine, and compel the attendance of witnesses, to present evidence in my defense, to remain silent and refuse to be a witness against myself by asserting my privilege against self-incrimination, all with the assistance of counsel, and to be presumed innocent until proven guilty beyond a reasonable doubt.

I agree to enter my guilty plea as indicated above on the terms and conditions set forth in this agreement.

1          I have been advised by my attorney of the nature of the charges to which I am entering my guilty plea. I have further been advised by my attorney of the nature and range of the possible sentence and that my ultimate sentence shall be determined by the Court after consideration of the advisory Sentencing Guidelines.

        My guilty plea is not the result of force, threats, assurances, or promises, other than the promises contained in this agreement. I voluntarily agree to the provisions of this agreement and I agree to be bound according to its provisions.

        I understand that if I am granted probation or placed on supervised release by the Court, the terms and conditions of such probation/supervised release are subject to modification at any time. I further understand that if I violate any of the conditions of my probation/supervised release, my probation/supervised release may be revoked and upon such revocation, notwithstanding any other provision of this agreement, I may be required to serve a term of imprisonment or my sentence otherwise may be altered.

        This written plea agreement, and any written addenda filed as attachments to this plea agreement, contain all the terms and conditions of the plea. Any additional agreements, if any such agreements exist, shall be recorded in a separate document and may be filed with the Court under seal; accordingly, additional agreements, if any, may not be in the public record.

        I further agree that promises, including any predictions as to the Sentencing Guideline range or to any Sentencing Guideline factors that will apply, made by anyone (including my attorney) that are not contained within this written plea agreement, are null and void and have no force and effect.

        I am satisfied that my defense attorney has represented me in a competent manner.

//
//
//
//

I fully understand the terms and conditions of this plea agreement. I am not now using or under the influence of any drug, medication, liquor, or other intoxicant or depressant that would impair my ability to fully understand the terms and conditions of this plea agreement.

11-14-23
Date

ALI JOSEPH
Defendant

## APPROVAL OF DEFENSE COUNSEL

I have discussed this case and the plea agreement with my client in detail and have advised the defendant of all matters within the scope of Fed. R. Crim. P. 11, the constitutional and other rights of an accused, the factual basis for and the nature of the offense to which the guilty plea will be entered, possible defenses, and the consequences of the guilty plea including the maximum statutory sentence possible. I have further discussed the concept of the advisory Sentencing Guidelines with the defendant. No assurances, promises, or representations have been given to me or to the defendant by the United States or any of its representatives that are not contained in this written agreement. I concur in the entry of the plea as indicated above and that the terms and conditions set forth in this agreement are in the best interests of my client. I agree to make a bona fide effort to ensure that the guilty plea is entered in accordance with all the requirements of Fed. R. Crim. P. 11.

I translated or had translated this agreement from English into Arabic to the defendant on the 11TH day of OCTOBER, 2023.

11/14/23
Date

SHAHEEN P. TORGOLEY
CHRISTOPHER T. RAPP
Attorneys for Defendant

//
//
//

- 11 -

## APPROVAL OF THE UNITED STATES

I have reviewed this matter and the plea agreement. I agree on behalf of the United States that the terms and conditions set forth herein are appropriate and are in the best interests of justice.

GARY M. RESTAINO
United States Attorney
District of Arizona

November 14, 2023
Date

*s/ Abbie B. Marsh*
DAVID A. PIMSNER
ABBIE BROUGHTON MARSH
CHRISTOPHER BROWN
Assistant U.S. Attorneys

## ACCEPTANCE BY THE COURT

April 29, 2024
Date

HONORABLE DIANE J. HUMETEWA
United States District Judge